The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 *************
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On May 21, 1993, plaintiff sustained an injury by accident arising out of and in the course of her employment when she injured her hand and allegedly injured her neck while cutting out parts when the scissors she was using broke in her hand. The original claim regarding a carpal tunnel injury was accepted as compensable and benefits were paid.
3. The parties stipulate that there is insurance coverage for all relevant periods provided by ITT Hartford Insurance Company.
4. Plaintiff's average weekly wage at the time of her injury was $342.48, yielding a compensation rate of $228.28.
5. The parties stipulated, without need for further authentication or verification, into evidence plaintiff's medical records as follows:
 — Carolina Urgent Care — doctor notes — 6/1/93, prescription and doctor notes — 6/7/93;
 — Chapel Hill Radiology — radiologist's report — 6/1/93;
 — Matthews Physical Therapy Service, Inc. — progress notes — 6/9/93;
 — Boice-Willis Clinic, P.A. — Rosario Guaurino, M.D. — treatment notes dated 6/14/93, 6/29/93, 7/14/93, 8/4/93, 8/17/93, 9/9/93 and 10/11 93;
 — Nicholas A. Patrone, M.D. — treatment notes dated 8/10/93, 8/24/93 and 9/23/93. Prescription dated 10/18/94;
— William Deans, M.D. EMG study dated 9/2/93;
 — Stuart K. Todd, M.D. F.A.C.S. — treatment notes dated 10/21/93, 11/9/93 and 11/6/93;
 — Community Hospital of Rocky Mount — operative report dated 11/2/93;
 — Stuart K. Todd, M.D., F.A.C.S. — treatment notes dated 11/16/93 and 12/7/93. Out of work note dated 11/22 93 and 12/7/93. Letter to Lisa Grossman with John T. Orcutt's office.
 — Frederick K. Park, M.D. — treatment notes dated 11/18/93, 12/7/93, 12/13/93, 12/27/93, 1/4/94, 1/10/94, 2/1/94, 2/24/94, 3/1/94, 3/22/94, 4/13/94, 4/26/94 and 5/17/94. Note to Standard Products about wrist dated 1/10/94, 4/14/94 and 10/18/94;
 — Matthews Rehabilitation Services, Inc. — Functional Capacity Evaluation dated 11/2/94 and Functional Survey dated 11/2/94;
 — The Standard Products Company — Interplant and departmental communication from Cheryl Trumpler, R. N., dated 12/10/93 advising Ms. McCracken was out of work for surgery beginning 11/1/93;
 — Letter to Stuart K. Todd, M.D. from Lucas J. Martinez, M.D. dated 1/26/95;
 — Lucas J. Martinez, M.D. — treatment notes dated 4/6/95, 4/13/95, 4/27/95, 5/25/95, 7/6/95, 9/28/95 and 11/30/95. Out of work note dated 5/25/95 and return to work note dated 7/6/95;
 — Fredrick K. Park, M.D. — out of work note dated 11/22/93. Treatment notes dated 10/18/94 and 1/16/95;
— Stuart Todd, M.D. — treatment note dated 1/23/95;
 — W.R. Deans, M.D. — treatment note dated 2/17/95;
 — Nash Day Hospital — cervical MRI spine dated 10/30/95;
 — Nash Day Hospital — Out-patient physical therapy dated 11/9/95;
 — Nash Orthopedic Associates, P.A. — E. O. Marsigli, M.D. treatment notes dated 4/26/95, 5/3/95, 5/24/95, 6/21/95, 10/25/95, 11/15/95 and 3/4/96;
— Nash Healthcare — cervical fusion 4/18/95;
 — Work status from; L. J. Martinez, M.D. 11/21/95; Physical Capacities Evaluation;
 — Attending physician statement — John M. Mitchell, M.D. 4/22/96 — out of work indefinitely;
 — Nicholas A. Patrone, M.D., F.A.C.P. — Rheumatology consultation dated 5/8/96. Treatment notes dated 5/20/96, 6/3/96, 7/1/96 and 9/5/96;
— Lab workup; Nicholas Patrone, M.D. 5/9/96;
 — Lewis Thorpe, M.D., Boice-Willis Clinic, records are ordered but dates are unknown at this time;
 — John M. Mitchell, M.D., Rocky Mount Family Medical Center, records are ordered but dates are unknown at this time.
6. The parties stipulated into evidence a letter from Terri Sharpe, Benefits Coordinator for defendant-employer showing disability benefits received by plaintiff from April 17, 1995 until July 24, 1995. This disability benefit was completely employer funded.
7. Plaintiff was paid temporary total disability compensation for the period from November 2, 1993 through January 23, 1994 pursuant to the Form 21 Agreement entered into by the parties and approved by the Commission on December 15, 1993. The carpal tunnel release and trigger finger release which plaintiff underwent was also accepted as compensable pursuant to the Form 21 and this medical treatment was paid for by defendant-employer.
 ************* RULINGS ON EVIDENTIARY MATTERS
The objections raised by the parties at the deposition of Dr. Martinez are ruled upon in accordance with the law and the Opinion and Award rendered in this matter.
 *************
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner in this matter plaintiff was a 56 year old woman born October 22, 1939 who had completed the eighth grade and received her GED. Prior to being employed with defendant-employer on August 15, 1985, plaintiff had worked primarily in restaurants and had worked approximately one year in a plastics factory. Plaintiff was employed with defendant-employer for approximately eleven years as a molder and in the toggle department and the scrip area.
2. On May 21, 1993, plaintiff suffered a compensable injury by accident injuring her right hand and fingers when as she was cutting rubber parts with scissors, the handle of the scissors broke and went into her palm. Plaintiff felt pain at that time in her hand, fingers and upper arm.
3. Plaintiff first sought medical treatment for this injury on June 1, 1993. At that time plaintiff was experiencing burning and stinging in her right palm, wrist and all five fingers. Plaintiff was treated conservatively and given physical therapy. Thereafter, plaintiff was referred to Dr. Rosario Guarino, a neurologist. EMG and nerve conduction studies were done and plaintiff was diagnosed with right carpal tunnel syndrome. Plaintiff continued to experience pain and on June 29, 1993 again saw Dr. Guarino complaining of continued right hand pain and aching right arm with some upper right chest wall pain. An x-ray of plaintiff's cervical spine was taken on June 29, 1993 which indicated mild to moderate degenerative changes of the cervical spine. On August 4, 1993 plaintiff was experiencing some trigger finger problems in her right hand and was referred to Dr. Nicholas Patrone. On August 10, 1993 plaintiff was diagnosed by Dr. Patrone as having trigger finger of the right hand, third finger and was given a trigger finger injection. On August 17, 1993 plaintiff complained that her entire right arm hurt and she still had some neck discomfort.
4. On September 2, 1993, a repeat EMG/nerve conduction study was performed which was negative for cervical radiculitis and showed mild carpal tunnel syndrome. Plaintiff was referred to Dr. Patrone for a carpal tunnel steroid injection.
5. On October 11, 1993, plaintiff continued to complain of hurting pain in her right arm and fingers and was referred to Dr. Stuart Todd, a surgeon, for a carpal tunnel release which was performed on November 2, 1993. Plaintiff went out of work on November 2, 1993.
6. Thereafter, plaintiff continued to complain of pain and on November 16, 1993 Dr. Todd referred her to Dr. Frederick Park due to trigger finger of the middle finger of the right hand. On December 27, 1993, plaintiff underwent a trigger finger release performed by Dr. Park.
7. On January 23, 1994, plaintiff returned to work. Thereafter, from January 1994 until April 1995 plaintiff took a period of two weeks of personal leave.
8. By March 22, 1994, plaintiff continued to have some pain along the outside of her hand, but otherwise was much better and able to do her work well. At that time she was encouraged to return to her full duty.
9. Plaintiff continued to work and experienced some pain in her hands. Plaintiff continued at full time employment with defendant-employer from January 23, 1994 until April 12, 1995.
10. On January 23, 1995, plaintiff returned to Dr. Todd indicating that she had pain in her right wrist that went up her arm and also some shoulder weakness. At that time plaintiff was referred to Dr. Lucas Martinez for a neurosurgical evaluation. Dr. Martinez ordered EMG/nerve conduction studies of the right arm which proved to be normal. On April 13, 1995, Dr. Martinez diagnosed plaintiff with a C3-C4 central herniation with a narrowing of the neural foramina bilaterally. On April 18, 1995, Dr. Martinez performed an anterior cervical laminectomy on plaintiff.
11. Plaintiff was out of work as a result of this cervical laminectomy from April 12, 1995 to July 29, 1995. During this period she received short-term disability benefits at a rate of $186.40 per week. These benefits were entirely funded by defendant-employer.
12. On July 29, 1995, plaintiff returned to her full-time employment with defendant-employer where she remained until April 22, 1996. On that date she voluntarily terminated her employment with defendant-employer due to ongoing complaints of neck pain.
13. On April 6, 1995, plaintiff reached maximum medical improvement of her carpal tunnel and trigger finger conditions and as a result thereof sustained a five percent permanent partial disability of the right hand.
14. Prior to plaintiff's May 21, 1993 injury, plaintiff's medical history is significant for an automobile accident in February 1992 at which time she sustained injury to her neck and knee and was subsequently treated for cervical muscle strain.
15. Dr. John Mitchell, plaintiff's family doctor, treated plaintiff for her neck complaints following her automobile accident of February 1992. In July of 1992 he noted that plaintiff suffered from myofacial syndrome. Dr. Mitchell was of the opinion that the neck complaints from which plaintiff suffered after February 19, 1992 were related to her neck injury in the automobile accident and not related to her work. Furthermore, plaintiff's February 1992 automobile accident could have triggered plaintiff's osteoarthritic complaints.
16. Dr. Martinez as a result of a hypothetical propounded by plaintiff's counsel, testified as to causation of plaintiff's neck complaints by the May 21, 1993 scissor incident. However, plaintiff did not report any pain in her neck or any neck injury when she visited him in January 1995. Furthermore, Dr. Martinez was of the opinion that the automobile accident could have caused plaintiff's cervical condition in 1995. After plaintiff's April 22, 1996 resignation from her employment with defendant-employer, on March 14, 1997, plaintiff underwent a lumbar laminectomy on March 14, 1997 to treat a herniated lumbar disc at L5-S1.
17. Plaintiff's cervical condition and the resulting cervical laminectomy kept plaintiff out of work for approximately three months. Plaintiff did not have any authorization to be out of work due to her neck condition after that time.
18. Plaintiff's cervical spine condition is not a result of her May 21, 1993 compensable injury by accident, but rather is a result of her February 19, 1992 automobile accident and/or an osteoarthritic condition.
19. Plaintiff was out of work as a result of her May 21, 1993 injury and the resulting carpal tunnel release and trigger finger release from November 2, 1993 through and including January 23, 1994. Plaintiff has received temporary total disability compensation for this period.
20. As a direct and proximate result of plaintiff's May 21, 1993 compensable injury by accident plaintiff sustained right carpal tunnel syndrome and trigger finger of the right third finger. As a result of these conditions plaintiff has sustained a five percent permanent partial disability of the right hand.
 *************
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On May 21, 1993, plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with defendant-employer injuring her right hand and fingers and thereby sustaining right-handed carpal tunnel syndrome and trigger finger. N.C.G.S. § 97-2(6).
2. Plaintiff is entitled to temporary total disability benefits from November 2, 1993 to January 23, 1994. Plaintiff has previously been paid these benefits pursuant to a Form 21. N.C.G.S. § 97-29.
3. Plaintiff is entitled to permanent partial disability benefits at a rate of $228.28 for a period of ten weeks for her five percent permanent partial disability of the right hand. N.C.G.S. § 97-31(12).
4. Plaintiff's cervical spine condition and the resulting pain is not a direct and proximate result of plaintiff's May 21, 1993 work-related accident.
 *************
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay plaintiff permanent partial disability benefits in the amount of $228.28 for ten weeks. This amount has accrued and shall be paid in a lump sum, subject to the attorney's fee approved below.
2. An attorney's fee in the amount of twenty-five percent of the plaintiff's lump sum recovery under Paragraph 1 of this Award is hereby approved for the plaintiff's attorney in this case. The defendants are to deduct the attorney's fee from the lump sum amounts owed to the plaintiff and pay the fee directly to plaintiff's attorney.
3. Defendant shall pay all medical expenses resulting from said injury to the right hand and fingers when the same have been presented and approved by the North Carolina Industrial Commission.
4. Defendants shall bear the costs; furthermore, defendant shall pay a fee of $280.00 to Dr. Martinez in connection with his deposition taken in this matter on May 7, 1997.
This ___ day of August 1998.
 S/ ________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ______________________ LAURA K. MAVRETIC COMMISSIONER
DISSENTING:
S/ ______________________ CHRISTOPHER SCOTT COMMISSIONER